IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESSICA RUTH TURNEY,

     Claimant,

v.                                                  Civ. No. 12-963 GBW

CAROLYN W. COLVIN,
*Commissioner of the*
*Social Security Administration*,

     Defendant.

## ORDER GRANTING CLAIMANT'S MOTION TO REVERSE AND REMAND

This matter comes before the Court on Claimant's Motion to Reverse and

Remand the Social Security Administration (SSA) Commissioner's decision to deny

Claimant disability insurance benefits. *Doc. 20*. For the reasons discussed below, the

Court grants Claimant's motion and grants limited remand of this action to the

Commissioner for further proceedings consistent with this opinion.

I.    **BACKGROUND**

    A.  **Claimant's medical history**

Claimant Jessica Turney is a 30-year-old mother of two who suffers from a

variety of psychological ailments arising from a troubled childhood and subsequent

adult struggles. In late 2004, Claimant was referred to Socorro Mental Health, Inc. by a

treating physician, Dr. Rachel Evans. Administrative Record (AR) at 341. Beginning in

early 2005, Claimant was treated by a variety of physicians there. In January 2005,

Claimant was assessed with "extreme" psychological issues requiring treatment.  AR at 346.  In February 2005, Dr. W. Winslow examined Claimant and noted that she complained of severe anxiety and depression, and was, at the time of her referral, being treated with Effexor and Lorazepam. AR at 337.  He diagnosed her with panic disorder and depressive disorder, as well as headaches that were likely stress related, and estimated her Global Assessment of Functioning (GAF) score to be 45-48.  AR at 339-340.  Dr. Winslow continued to treat Claimant throughout 2005, during which time Claimant presented with fluctuating levels of psychological health.  AR at 327-336.  Claimant was also evaluated in December 2005 by Dr. Clifford Morgan, who found that she suffered from moderate to severe depression, as well as significant anxiety.  AR at 277.  Dr. Morgan noted that while Claimant had "an unstable work history, she is able to obtain multiple jobs" and that Claimant should be capable of completing her GED. AR at 278-279.

Claimant's psychological status continued to fluctuate throughout 2006, with Claimant remaining on medication for anxiety and depression as well as bipolar disorder.  AR at 299, 320-326.  In May of 2006, Claimant was evaluated in a disability determination examination by Dr. Louis Wynne.  He confirmed diagnoses of panic disorder with agoraphobia and a mood disorder with bipolar, depressive, and anxiety features.  AR at 300.

In 2007, Claimant was evaluated by Dr. S. Donofrio of Socorro Mental Health, Inc.  He diagnosed her as having a history of PTSD, depression, generalized anxiety disorder, and panic disorder with agoraphobia.  AR at 315-319.  At that point she was being treated with Wellbutrin, Trazodone, and Propranolol.  AR at 316.  At the follow-up to her initial consultation with Dr. Donofrio, Claimant reported feeling "hopeless" but not suicidal.  AR at 313.

Dr. Donofrio continued to treat Claimant throughout 2008.  In February 2008, he assessed Claimant's GAF at 41, and noted that she remained under treatment for depression but was unresponsive to Wellbutrin.  AR at 311.  Klonopin was added to Claimant's treatment regime and she was tapered off Wellbutrin.  *Id.*  In April 2008, Claimant reported a significantly improved mood and that she was employed. AR at 308.  In May 2008, Claimant experienced a return of depressive symptoms, apparently related to the fact that she was not working due to the closure of the McDonalds where she had been employed.  AR at 305.  By August 2008, Claimant had suffered a significant setback in her mental status, reporting post-traumatic stress flashbacks, and noting that she "looked forward to going back to work."  AR at 303.

By April of 2009, Claimant was again experiencing improvement in her psychological symptoms, possibly due to her treatment with Strattera.  AR at 417.  She remained on Klonopin and Cymbalta.  *Id.*  Claimant's desire to return to work was still present in 2009.  AR at 410.  Dr. Donofrio evaluated her GAF as 43. AR at 423-24. In

August 2009, a licensed mental health counselor at the Socorro Mental Health Center noted that Claimant experienced a return of depressive symptoms when she "had too much time to think" and that it was helpful for Claimant to stay occupied to allay her depression.  AR at 419.   In September of 2009, Claimant was evaluated by Dr. W. Miller Logan.  He diagnosed her with ADHD, recurrent major depressive disorder that was in remission, chronic PTSD, and illegal substance dependence.  AR at 526, 528, 530, 533. He noted that her functional limitations were moderate and that she had not reported any episodes of decompensation.  AR 535.  He concluded that the evidence of her psychological illness did not establish the presence of "C" criteria, and found that indications of Claimant's paranoia and agoraphobia were not fully supported by her medical records.  AR at 536-537.  He noted that her activities of daily living report (ADL) appeared to conflict with her reports of daily activities to her therapist, with Claimant's personal reports indicating purposeful and organized activity: Claimant cared for her children, grocery shopped on a daily basis, and bathed a few times a week.  AR at 537.   Dr. Logan's functional capacity assessment found that Claimant "retain[ed] the capacity to perform simple, repetitive work related tasked in a setting with limited contact with the public." AR at 541.  By November 2009, Claimant reported that she feared never recovering from her depression and that she was "starting to fall apart."  AR at 600.

In January 2010, Claimant crashed her car into the Socorro Mental Health Center with her children inside the vehicle.  AR at 629.  Dr. Donofrio noted that this behavior was as a result of an inability to cope with "overwhelming emotional responses to many life circumstances" and recommended tapering Claimant off of Klonopin and decreasing Claimant's use of Suboxone.  AR at 628.  By mid-2010, Claimant claimed that she was "pretty good in general," but that her home life was depressing and overwhelming, and that she suffered from impaired memory.  AR at 625, 673-74.   By late 2010 Claimant was also being treated with Prazosin and reported having increasing financial stress, but that she "[g]eneral[ly] thinks she's doing well."  AR at 669, 716. Medical records from late 2010 note that Claimant had a history of hoarding pills and of opioid dependence, as well as ongoing cannabis use.  AR at 658, 719.

In 2011, Claimant reported missing several counseling sessions.  AR at 713.  She continued to report many stressors in her life and ongoing PTSD symptoms. AR at 707, 718, 737.   As of March, 2011, Claimant was taking Cymbalta, Strattera, Suboxone, Prazosin, and Klonopin for her mental conditions.  AR at 268.

**B.  <u>Procedural history</u>**

Claimant filed her Title II and XVI applications for disability insurance benefits and supplemental security income on July 23, 2009.  AR at 10.  Her claims were denied on September 28, 2009. AR at 74, 79. Claimant made her request for reconsideration on November 5, 2009, which was denied on March 16, 2010.  AR at 85, 86, 88.  Claimant

requested a hearing on April 16, 2010.  AR at 91.  An in-person hearing was held on

March 23, 2011.  AR at 28-67.  The ALJ issued his decision on May 19, 2011, denying

Claimant's request for benefits. AR at 7-19.  Her request for reconsideration of the ALJ's

decision was denied on August 3, 2012.  AR at 1-2.  Claimant filed her complaint in the

instant matter on September 13, 2012.  *Doc. 1.*

## II.   APPLICABLE LAW

### A.  Standard of review

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence,"

and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human*

*Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, 'we neither

reweigh the evidence nor substitute our judgment for that of the agency.'"  *Bowman v.*

*Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.3d at 800.  "The record must demonstrate that the ALJ considered all of the

evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v.*

*Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  "[I]n addition to discussing the evidence

supporting his decision, the ALJ must also discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id*. at

1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**B.  Disability determination process**

For purposes of Social Security disability insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five step test.  *See* 20 C.F.R. § 404.1520. If the Commissioner is able to determine whether an individual is disabled at one step, he does not go on to the next step.  *Id*. § 404.1520(a)(4).  The steps are as follows:

(1) Claimant must establish that he is not currently engaged in "substantial gainful activity."  If claimant is so engaged, he is not disabled.
(2) Claimant must establish that he has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that have lasted for at least one year.  If claimant is not so impaired, he is not disabled.
(3) Claimant must establish that his impairment(s) are equivalent to a listed impairment that has already been determined to be so severe as to preclude substantial gainful activity.  If listed, the impairment(s) are presumed disabling.
(4) If the claimant's impairment(s) are not listed, claimant must establish that the impairment(s) prevent him from doing his "past relevant work."  If claimant is capable of returning to his past relevant work, he is not disabled.
(5) If claimant establishes that the impairment(s) prevent him from doing his past relevant work, the burden shifts to the Commissioner to show that

claimant is able to "make an adjustment to other work."  If the Commissioner is unable to make that showing, claimant is deemed disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

The primary issue in this case is the fourth step of the five step evaluation process. Step four of the analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  A claimant's RFC is "the most [he] can still do despite [his physical and mental] limitations." *Id*. § 404.1545(a)(1).  Second, the ALJ determines the physical and mental demands of claimant's past work.  "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)).  Third, the ALJ determines whether, in light of his RFC, the claimant is capable of meeting those demands.  *Id*. at 1023, 1025.

## III.   Analysis

Claimant does not challenge the ALJ's determinations at steps one, two, and three of the sequential analysis.  The dispute centers on the ALJ's determination of Claimant's RFC at step four and subsequent failure to move to step five of the analysis.   Specifically, Claimant argues that the ALJ's findings are erroneous for four reasons:  (1) the ALJ failed to incorporate Claimant's moderate limitations into his RFC finding; (2) the ALJ did not properly evaluate Claimant's credibility; (3) the ALJ

8

improperly rejected Claimant's psychologist's GAF assessments and failed to discuss the relevant probative evidence relating to Claimant's psychological condition; and (4) the ALJ failed, at phase two of the step four analysis, to make a specific finding as to the physical and mental demands of Claimant's past relevant work. *Doc. 1.* The Court, having carefully reviewed the record and applicable law, finds that the ALJ erred in determining whether Plaintiff can perform her past relevant work and therefore GRANTS Claimant's request for remand.

### A.    The ALJ properly incorporated Claimant's moderate limitations into his RFC finding

Relying on *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007), Claimant argues that the ALJ failed to properly consider her limitations as to concentration, persistence, and pace when determining Claimant's RFC. *Doc 20* at 7-8. Claimant asserts that the ALJ's RFC determination fails to demonstrate how the ALJ reached his conclusion that Claimant only required the accommodation of two hour breaks. *Doc. 20* at 9. The Commissioner counters that Claimant has not met her burden of showing that the ALJ wrongly determined her RFC, particularly in light of the fact that the ALJ specifically stated he had considered all the evidence in making his RFC determination. *Doc. 25* at 4-5.

The claimant's RFC is determined at step four, phase one of the sequential analysis. *Winfrey*, 92 F.3d at 1023. The ALJ is required to "assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual

functional capacity for work activity on a regular and continuing basis." 20 C.F.R. §

404.1545(b). The claimant bears the responsibility of providing medical evidence of a

mental impairment. 20 C.F.R. §§ 404.1514 and 404.1508; *accord, Howell v. Sullivan*, 950

F.2d 343, 348 (7th Cir. 1991). The ALJ has an obligation to develop a full and fair record.

*Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir.1991).

As the Commissioner properly explains, the ALJ first made findings about

Claimant's mental limitations at Steps Two and Three of the sequential assessment, and

then discussed the fact that these mental limitations imposed certain restrictions for the

purposes of the ALJ's RFC evaluation at Step Four. *Doc. 25* at 6; AR at 13; *see also* Social

Security Ruling (SSR) 98-8P, 1996 WL 374184, at *1 (1996) ("The RFC assessment considers

only functional limitations and restrictions that result from an individual's medically

determinable impairment or combination of impairments, including the impact of any related

symptoms."). Specifically, in Step Four, Phase One, the ALJ found that Claimant's RFC

allowed her to perform "a full range" of exertional activities, proscribed by her non-

exertional (mental) limitations,[1] which indicated that she should perform tasks that do

not require extended contact with other people, and tasks that are routine and

repetitive. AR at 13. In reaching this determination he noted that Claimant had

"moderate difficulties" with concentration, persistence, and pace and found that these

moderate difficulties resulted in her ability to maintain concentration, persistence, or

---

[1] Claimant's mental conditions are, for the purposes of the RFC, medical impairments, not "functional limitations and restrictions" resulting from an impairment. *See Jimison ex rel. Sims v. Colvin*, 2013 WL 1150290, at * 3 (10th Cir. Mar. 21, 2013).

pace for two hour periods.  *Id.*  The ALJ explained that he premised his decision on an

evaluation of the "intensity, persistence, and limiting effects" of Claimant's

demonstrated psychological issues.  AR at 14.

Claimant's reliance on *Frantz* to support her position that remand is warranted

here is misplaced.  There, the Tenth Circuit ordered remand in part on the basis that the

ALJ failed to consider some of the moderate limitations set forth by the Claimant's non-

examining physician.  509 F. 3d at 1303.  Here, the ALJ not only considered, but

accepted, the moderate limitations presented by Claimant, and explicitly discussed

them in making his RFC determination.  AR at 13-14, 17.  Further, Claimant cites no case

law for the proposition that the ALJ's conclusion that she required two hour breaks is

"incomprehensible." *See doc. 20* at 8-9.

In fact, as the Tenth Circuit noted in *Haga v. Astrue*, a moderate limitation affects

a claimant's skills to a certain degree but not so severely that the claimant cannot

function—which is precisely how the ALJ applied that definition. 482 F.3d 1205, 1208

(10th Cir. 2007).  The ALJ (completely comprehensibly) found that Claimant's moderate

limitations, caused by her psychological issues, led to her needing to take regular breaks

during the course of her work day.  *See Echols v. Astrue*, 2009 WL 1606497, at *17 (W.D.

Okla. June 8, 2009) (holding that the claimant's moderate mental limitations were

accurately reflected in the ALJ's RFC, which stated that claimant had restrictions on her

ability "to understand, remember, and carry out detailed instructions; maintain attention and

concentration; and interact appropriately with the general public and set goals independently.").

The ALJ properly incorporated Claimant's moderate limitations into his RFC determination.

**B.**     **The ALJ properly analyzed Claimant's credibility**

Claimant argues that the ALJ failed to properly assess Claimant's credibility because he ignored and/or failed to rely on significantly probative evidence about Claimant's abilities without explaining why he did so. *Doc. 20* at 11. Instead, Claimant contends that the ALJ only considered a fraction of Claimant's daily reported activities and abilities. *Id.* at 11-13.

Credibility determinations are properly made by the ALJ, and the Court should generally defer to the ALJ's credibility determinations. *Castellano v. Sec'y of Health & Human Serv.*, 26 F.3d 1027, 1030 (10th Cir. 1994) (*citing Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988)); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (citations omitted). Credibility determinations must be supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted).

To begin with, the "boilerplate" recitation to which Claimant cites does not indicate that the ALJ applied an improper legal standard—it is a transition paragraph between the ALJ's review of Claimant's medical record and a discussion of Claimant's subjective complaints. *See* AR at 16. A contextual reading of the impugned paragraph

makes it clear that the intent of this paragraph is to prepare the reader for a comparison of Claimant's medical history to her stated capacity for work. *See Wall v. Astrue*, 561 F.3d 1048, 1069-70 (10th Cir. 2009) (using a contextual reading of a paragraph of the ALJ's decision to show that the ALJ's comment was illustrative rather than a statement of a legal standard).

As to Claimant's remaining claims regarding the ALJ's alleged failure to consider Claimant's evidence, the Court recognizes that the ALJ's credibility determination must be "closely and affirmatively linked" to substantial record evidence. *Hardman v. Barnhart*, 362 F.3d 676, 678–79 (10th Cir.2004). The substantial probative evidence that Claimant claims the ALJ ignores is comprised of two Function Reports prepared by Claimant and Claimant's own testimony at the hearing. *Doc. 20* at 12; AR at 207-14, 262-265.

In his ruling, the ALJ summarized Claimant's testimony, including relating Claimant's statements about the physical consequences of her psychological symptoms. AR at 14. He also summarized Claimant's medical records from 2005 to 2011, and explained that, having considered this evidence, he accepted Claimant's statement of her symptoms but questioned their severity. AR at 14-16. He then explained his doubts about their severity by referencing Claimant's descriptions of her activities as set forth

in her Function Reports.[2]  AR at 16-17.  For example, he notes that Claimant describes

taking care of her children, cooking and cleaning her house, and daily grocery

shopping.  *Id*.  Finally, he notes that none of Claimant's treating physicians have

identified her as disabled, a conclusion consistent with this Court's review of the record.

AR at 17.

 Having made these specific findings, the ALJ properly found Claimant's

testimony not fully credible.  *See McDonald v. Astrue*, 492 F. App'x 875, 884-85 (10th Cir.

2012) (upholding the ALJ's credibility determination about the degree to which the

claimant's limitations were disabling where the ALJ properly linked his credibility

determination to evidence in the record).

Because the ALJ linked his credibility determination to substantial evidence in

the record, claimant has failed to show that the ALJ erred in his credibility

determination.

C.     **The ALJ properly rejected the treating physician's GAF scores**

Next, Claimant contends that the ALJ erred when he found that the GAF[3] scores

assigned to Claimant by her treating physician, Dr. Donofrio, were inconsistent with the

---

[2] Claimant incorrectly states that the ALJ did not consider her Function Report from August 17, 2009.
*Doc. 20* at 12.  In fact, the ALJ explicitly considered that Function Report. *See* AR at 16-17.
[3] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the
individual's overall level of functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004)
(citation omitted).  "[A] low GAF score does not alone determine disability, but is instead a piece of
evidence to be considered with the rest of the record." *Petree v. Astrue*, 260 F. App'x 33, 42 (10th Cir.
2007).  A GAF score below 50 can indicate significant social impairment. *Langley*, 373 F.3d 1122 n.3.  But,
importantly, "a low GAF score does not necessarily evidence an impairment seriously interfering with a

overall medical evidence in the record.  *Doc. 20* at 13.  Claimant contends that for the

ALJ to properly reject Claimant's treating physician's GAF scores, he should have

provided detailed evidence and cited to substantial evidence to the contrary, both of

which Claimant argues the ALJ failed to do. *Doc. 20* at 15.  The Commissioner does not

contest that Dr. Donofrio is Claimant's treating physician.  Rather, she counters that this

Court must take the ALJ at his word when the ALJ stated that he had properly

considered all the medical evidence before him, citing *Marshall v. Astrue*, 315 F. App'x

757, 760-61 (10th Cir. 2009).  *Doc. 25* at 8.  Further, according to the Commissioner, the

ALJ properly explained why he determined that the assigned GAF scores were

inconsistent.  *Id.*

     An ALJ is required to give controlling weight to a treating physician's well-

supported opinion, including his GAF determination, so long as it is not inconsistent

with other substantial evidence in the record.  20 C.F.R. § 416.927(c)(2).  When analyzing

the opinion of a treating physician, the ALJ first considers "whether the opinion is well

supported by medically acceptable clinical and laboratory diagnostic techniques and is

consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500

F.3d 1074, 1077 (10th Cir. 2007). If the opinion meets both criteria, the ALJ must give the

opinion controlling weight. *Id*.  But, when, as here, the ALJ decides the treating

---

claimant's ability to work.  The claimant's impairment, for example, might lie solely within the social,
rather than the occupational, sphere." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (internal
citation omitted).

physician's opinion is not entitled to controlling weight, the ALJ must still decide

whether the opinion in question is entitled to some weight.  *Id.*  In making this decision,

ALJ should consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001) (*citing Goatcher v. U.S. Dep't of*

*Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995)).

The fundamental disagreement between Claimant and the Commissioner is

whether the explanation the ALJ provided for disregarding Dr. Donofrio's GAF scores

was adequate.  *Doc. 20* at 15-16; *Doc. 25* at 8; *Doc. 26* at 2.   The first question that must

be answered is whether the ALJ properly analyzed Dr. Donofrio's opinion to decide if it

was entitled to controlling weight.  While the ALJ did not address the first of the two

factors in the controlling weight analysis (whether the treating physician opinion is

supported by appropriate clinical and laboratory techniques), he did consider the

second factor—the opinion's consistency with the other record evidence.  The ALJ

found that Dr. Donofrio's assessed GAF scores of 39, 41, and 43 were not consistent

16

with the other substantial evidence he reviewed.[4] AR at 17.  In particular, he noted that

Claimant's work history indicated her ability to perform the basic functions of her prior

employment and her medical history indicated that her psychological condition is

stable and improved with medication.  *Id*.  The record supports the ALJ's reasoning.

For example, Claimant's own testimony indicates that in her past employment she was

capable of performing the underlying job.  When asked why she did not stay employed,

she testified that she "didn't know" and that perhaps she just got "bored" at her former

jobs.  *See, e.g.*, AR at 40-43, 46.  Her Function Reports and medical records show that she

is capable of performing work around the house.  *See, e.g.*, AR 262, 264, 417, 537.  While

Claimant testified on March 23, 2011 that she did not believe her depression was "being

handled" (AR at 49), as of March 2, 2011, Claimant's medical records indicate her

psychological illnesses were "stable" with medication.  AR at 708-09.   The ALJ's failure

to consider whether Dr. Donofrio's GAF scores were supported by "medically

acceptable clinical and laboratory diagnostic techniques" is inapposite: if the ALJ

determines that one of the two components of the controlling weight analysis is not

met, the ALJ is not required to discuss the other component.  *Marshall*, 315 F. App'x at

760.

---

[4] Although the ALJ did not expressly state that his analysis was intended to determine whether to give
Dr. Donofrio's opinion controlling weight, he is not required to.  It is sufficient that the ALJ performed
the consistency analysis and stated that he was considering the opinion in light of the regulations and
social security rulings that discuss the weight to give a treating physician's opinion,  *Marshall*, 315 F.
App'x at 760-61.

Having declined to give Dr. Donofrio's opinion controlling weight, the ALJ was required to determine whether it was nonetheless entitled to some lesser weight. A review of the ALJ's ruling shows that he did not go through a point by point discussion of the factors listed in *Drapeau*. Instead, he appeared to rest on the third and fourth factors—the degree to which the physician's opinion is supported by relevant evidence and the consistency between the opinion and the record as a whole—which Claimant argues necessitates remand. The Tenth Circuit addressed the requirement of a factor by factor analysis in *Marshall*. There, the ALJ, rather than addressing each factor, focused only on the fourth factor in explaining why he rejected the treating physician's opinion. 315 F. App'x at 761. In upholding the ALJ's finding, the court explained that "[a]lthough the ALJ's discussion could and should have been more thorough, we conclude that he stated adequate reasons for rejecting [the treating physician's] opinion." *Id.* at 761; *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("[While] the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him . . . [the claimant] cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."). The ALJ's analysis here, while it focused on the degree to which Dr. Donofrio's assessment was consistent with, and

18

supported by, the evidence in the record, certainly provides an adequate basis on which

the ALJ can reject Dr. Donofrio's GAF scores[5] and cannot serve as a basis for remand.

**D.    The ALJ did not properly completed Phase Two of Step Four**

Claimant also contends that the ALJ failed to complete Phase Two of Step Four,

because he did not properly develop the factual record as to the physical and mental

demands of Claimant's past relevant work (PRW) as a housekeeper.  *Doc. 20* at 17.

According to Claimant, since the ALJ did not properly examine the vocational expert,

he could not make a specific finding as to the physical and mental demands of

Claimant's PRW.  *Id.*

In Phase Two of Step Four, the ALJ is required to determine the physical and

mental demands of Claimant's PRW.  *Winfrey*, 92 F.3d at 1023.  In order to make these

findings, an "ALJ must obtain adequate factual information about those work demands

which have a bearing on the medically established limitations." *Id.* at 1024.  The ALJ

may not delegate this analysis to a vocational expert.  *Doyal v. Barnhart*, 331 F.3d 758,

761 (10th Cir. 2003).

The issue here is whether or not the ALJ properly developed the record in

regards to the mental demands[6] of Claimant's PRW as a housekeeper.  The ALJ can

properly develop the record using a variety of sources, including the claimant, her

---

[5] While the ALJ rejects entirely Dr. Donofrio's GAF scores, his still gives some weight to Dr. Donofrio's opinion as a whole.  *See* AR at 15-17.

[6] Although Claimant briefly references the physical demands of her past work (*see doc.* 20 at 17), at the administrative hearing Claimant's counsel stated that the only disabilities at issue were mental.  AR at 61. The record before the Court contains no indication of a physical disability.

employer, or other knowledgeable sources. *Sissom v. Colvin*, 2013 WL 765302, at *5 (10th Cir. Mar. 1, 2013) (*citing* SSR 82-62, 1982 WL 31386, at *3 (1982)). Here, the ALJ sought Claimant's testimony and the testimony of a vocational expert (VE) as to the mental demands of Claimant's PRW. First, the ALJ, and Claimant's attorney, questioned Claimant as to her work and mental health history. AR at 35-59. Then, at the ALJ's request, the VE identified the job title from the Dictionary of Occupational Titles (DOT) for each of Claimant's past relevant jobs, as well as the specific vocational preparation (SVP) required. The VE testified that Claimant's PRW as a housekeeper was "DOT [ ] 323.687-014" and had an "exertional level [of] light work and [is] unskilled with an SVP of 2."[7] AR at 61.

> The ALJ then posed the following hypothetical question about Claimant's PRW:
>
> . . . if we assume a person of the claimant's age, educational and work background who's work would be most appropriately limited to simple, routine, and repetitive tasks who should have only occasional interaction with the public and coworkers, who's work should be performed in isolation with only occasional supervision and who's work should be restricted to working primarily with things and not people.

AR at 62 (original wording). Based on the parameters provided, the VE explained that, of her past relevant jobs, Claimant would only be able to work as a housekeeper. AR at 62.

---

[7] Claimant contends that the ALJ erred in disregarding part of the vocational analysis made on March 16, 2010, by vocational analyst Raymond House. *See* AR at 62-65, 612. In his report, Mr. House stated that Claimant required "simple, direct and concrete supervision" when performing tasks. AR at 612. The ALJ questioned the VE extensively about these terms in relation to Claimant. AR at 62-64. The VE (to whose qualifications Claimant's attorney stipulated, *see* AR at 60) testified that she had "never heard that [phrase] before" in the context of vocational analyses. AR at 64.

Claimant argues, and I agree, that this hypothetical is deficient because it fails to incorporate all of Claimant's moderate limitations. *Doc. 20* at 9.   The ALJ is bound to incorporate into the hypothetical the limitations he finds in the evidence. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).   A VE's conclusions are not supported by substantial evidence if they are based on a hypothetical that omits a demonstrated moderate mental limitation. *See Nelson v. Comm'r of Soc. Sec. Admin.*, 252 F. Supp. 2d 1148, 1164-65 (D. Kan. 2003) (*citing Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)).   Here, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties."   AR at 13.   However, these limitations were never communicated to the VE when the VE was asked to whether Claimant could perform her PRW.[8]   AR at 17.   In his findings as to Claimant's ability to perform her PRW, the ALJ solely relied on the VE's conclusion that Claimant could perform her PRW as a housekeeper, which was derived from the incomplete hypothetical.   AR at 18. This Court therefore cannot find that the ALJ's determination at Step Four, Phase Two of the sequential analysis was supported by substantial evidence.

## IV.   CONCLUSION

Claimant has failed to demonstrate that the ALJ erred in his assessment of Claimant's RFC, his determination of her credibility, or his treatment of her treating

---

[8] Even if one could interpret the hypothetical's limitation to "simple, routine, and repetitive" tasks as effectively communicating to the VE Claimant's difficulties with respect to "concentration and persistence," the hypothetical clearly lacks any information about Claimant's difficulty with "pace." *See* AR at 17.

physician's opinion.  However, Claimant has demonstrated that the ALJ's

determination at Step Four, Phase Two of the sequential analysis is not supported by

substantial evidence based on the incomplete hypothetical posed by the ALJ to the VE.

The Court reverses the Commissioner's decision denying Claimant benefits and

remands this action to the Commissioner to conduct further proceedings.  On remand,

the ALJ shall ensure that any hypothetical posed to the VE shall relate with precision all

of Claimant's impairments.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**